UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN ROBERT MURPHY, JR. and LOAN T. NGUYEN MURPHY<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | No.  2:13-cv-00555-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Defendant Ocwen's Motion to Dismiss (ECF No. 27) Plaintiffs' first and second claims of the Complaint (ECF No. 1).  For the reasons set forth below, the Motion to Dismiss is granted with leave for Plaintiffs to amend.

**I.    Background**

In June 2006, Plaintiffs Warren Murphy Jr. and Loan Murphy ("Plaintiffs") purchased a single-family residence located at 9254 Welford Ct., Sacramento CA 95829.[1]  (ECF No. 1 ¶ 12.) They resided in the house from the date of purchase until foreclosure on the property in or about January 2010. (ECF No. 1 ¶ 12.)  Plaintiffs financed the purchase with loans from Litton Mortgage and serviced by Little Loan Servicing.  (ECF No. 1 ¶ 13.)  The purchase was secured by first and second deeds of trust, the proceeds from which were used to pay part or all of the

---

[1] These facts are drawn from Plaintiffs' Complaint (ECF No. 1).  Defendant has no equivalent summary of the facts in its briefing.

purchase price of the house. (ECF No. 1 ¶ 13.) On September 1, 2011, Defendant Ocwen Loan Servicing, LLC ("Defendant") acquired ownership of Litton Loan Servicing, including Plaintiffs' loans, agreed to assume the liabilities on the loans, and continued to service the loans. (ECF No. 1 ¶ 13.)

Plaintiffs stopped making monthly payments on the loans in or about June 2008. (ECF No. 1 ¶ 14.) Thereafter, in or before January 2010, the holder of the first deed of trust initiated foreclosure proceedings that resulted in a trustee's sale. (ECF No. 1 ¶ 14.) Plaintiffs assert that the effect of the foreclosure was to extinguish the loan secured by the second deed of trust. (ECF No. 1 ¶ 14.)

In or around July 2012, Plaintiffs conducted a credit review with the three major consumer reporting agencies, Experian Information Solutions, Inc., Equifax LLC, and Trans Union LLC (the "CRAs"), and discovered that Defendant had been reporting that their loan account was due and owing a balance of $81,085.00 on the second mortgage. (ECF No. 1 ¶¶ 16–17.) Subsequently, in or around July 2012, Plaintiffs sent letters to the CRAs which stated that the information being reported by Defendant was inaccurate and the reasons why the information was inaccurate. (ECF No. 1 ¶ 23.) Plaintiffs state that the letters sent to the CRAs were actually "letters to Ocwen," but Plaintiffs do not indicate whether they additionally sent the same letters to Defendant in order to inform it of the dispute. (ECF No. 1 ¶ 23.) The CRAs then sent automatic customer dispute verification forms informing Defendant that the consumer was disputing the information Defendant had provided. (ECF No. 1 ¶ 24.) On or about August 2012, Plaintiffs received the results of the investigation from the CRAs.[2] (ECF No. 1 ¶ 25.)

Plaintiffs now bring suit alleging: 1) violation of the Fair Credit Reporting Act ("FCRA"); 15 U.S.C. § 1681 *et. seq.*; and 2) violation of the California Consumer Credit Reporting Act ("CCCRA"), California Code of Civil Procedure § 1785.25(a). (ECF No. 1.)

The basis for both claims is California Code of Civil Procedure section 580b, which bars a purchase money mortgagee, following foreclosure, from seeking a deficiency judgment for the

---

[2] Plaintiffs do not elaborate on the results of this investigation.

2

balance owed on the mortgage.  (ECF No. 1 ¶ 15.)  Plaintiffs claim that section 580b, in addition to precluding a deficiency judgment, "obliterates" their debt such that information about it cannot be furnished to credit reporting agencies.  (Plaintiffs' Opposition to Motion to Dismiss, ECF No. 34 at 8.)  Defendant is thus inaccurately reporting a debt that does not exist, in violation of the federal and state credit reporting statutes.[3]

Defendant contends that Plaintiffs' Complaint is factually and legally deficient and thus moves the Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 27.)

## II.     Standard of Law

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[3] The Complaint also alleges violations of the FCRA § 1681 *et seq.* by the CRAs, Equifax, Experian, and Trans Union.  The claims against Equifax were dismissed (ECF No. 39) following stipulation of dismissal (ECF No. 38); the claims against Trans Union were dismissed (ECF No. 33) following stipulation of dismissal (ECF No. 32).  Defendant Experian filed an Answer (ECF No. 19) to the Complaint and has not joined Defendant Ocwen's Motion to Dismiss (ECF No. 27).

3

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988*); Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

4

could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 622 (9th Cir. 2004)).

### III.    Analysis

**Claim 1: Violation of the FCRA § 1681s-2(b)**

i. FCRA § 1681s-2(b)

Congress enacted the Fair Credit Reporting Act in 1970 to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Accordingly, the Act sought to insure that "consumer reporting agencies exercise their grave responsibilities [with respect to assembling, evaluating, and disseminating information about consumer credit] with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). In addition to the duties imposed upon consumer reporting agencies, the FCRA also imposes a set of duties upon "furnishers" of information to the CRAs; these duties are detailed in section 1681s-2.

In the instant case, Plaintiffs allege that Defendant violated section 1681s-2(b), which is triggered when a consumer disputes the information being reported by a CRA and the CRA subsequently notifies the entity (in this case Defendant Ocwen) that has furnished the information.[4] Once the furnisher receives notice of dispute from the CRA, section 1681s-2(b) requires that the furnisher: 1) conduct an investigation; 2) review all relevant information

---

[4] *See* 15 U.S.C. § 1681i(a)(2) (requiring CRAs promptly to provide notification containing all relevant information about the consumer's dispute).

5

provided by the CRA concerning the dispute; 3) report the results of the investigation to the CRA; 4) if there is a finding that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the furnisher has provided the information; and 5) either modify, delete, or block further reporting of the information.[5]  15 U.S.C. § 1681s-2(b).

The basis of Plaintiffs' argument is that California Code of Civil Procedure section 580b, which states that a purchase money mortgagee may not obtain a deficiency judgment from the mortgagor following foreclosure, eliminated Plaintiffs' debt.  (ECF No. 1 ¶¶ 18–20.)  In this case, the holder of the first deed of trust foreclosed upon the property, thus extinguishing the holder of the second deed (apparently Defendant in both instances) from seeking a deficiency judgment for the unpaid second mortgage.  (ECF No. 1 ¶ 15.)  Plaintiffs claim that section 580b, in addition to precluding a deficiency judgment, "obliterates" their debt such that information about it cannot be furnished to CRAs.  (ECF No. 34 at 8.)  Defendant was thus reporting inaccurate information in violation of section 1681s-2(b).  (ECF No. 1 ¶¶ 18–20.)  In response, Defendant does not contest that it is barred, per section 580b, from seeking a deficiency judgment for the balance on the second mortgage.  (ECF No. 27 at 1.)  However, Defendant asserts that 580b does not prevent it from reporting the unpaid debt.  (ECF No. 27 at 1.)

/ / /
/ / /
/ / /
/ / /
/ / /

---

[5] Sections 1681n and 1681o provide a private right of action, respectively, for willful and negligent noncompliance with the FCRA.  Although section 1681s-2 does place limitations on private actions under 1681n and 1681o – including, that only federal or state agencies may enforce duties imposed on furnisher under section 1681s-2(a) – these limitations are not relevant here, because Plaintiffs are suing under 1681s-2(b).  There is a private right of action for willful (1681n) and negligent (1681o) violations of the furnisher's duties described in section 1681s-2(b). *See  Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (2009); § 1681s-2(c) ("Except [for circumstances not relevant here], sections 1681n and 1681o of this title do not apply to any violations of subsection (a) of this section …"); § 1681s-2(d) ("The provisions of law described in … [section 1681s-2(c)] … shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.").

6

ii. Application of California Code of Civil Procedure § 580b to FCRA § 1681s-2(b)

At the time the violations at issue in this lawsuit allegedly occurred, section 580b read:

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

Cal. Civ. Proc. Code § 580b.[6] A deficiency judgment is "a personal judgment against the debtor mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Herrera v. LCS Financial Serv. Corp.*, 2009 WL 2912517 *3 (N.D. Cal. 2009) (citing *Cornelison v. Kornbluth*, 15 Cal. 3d 590, 603 (1975)). Although ordinarily there may be a private action to recover a debt on a security for which the security is lost or has declined in value, section 580b prohibits such an action where the security is a purchase money deed of trust or mortgage. *Id.* (citing *Jeanese, Inc. v. Surety Tit. & Guar. Co.*, 176 Cal. App. 2d 449, 454 (1959)). In such a case, the vendor may look solely to the security itself, and no personal judgment may be recovered. *Id*. The bar against a deficiency judgment applies "even when the vendor takes a second purchase money trust deed. Section 580b precludes a vendor in second position from bringing an action on the note after the security has been rendered valueless due to sale by the senior lienor." *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000) (citing *Brown v. Jensen,* 41 Cal. 2d 193, 197–98 (1953)).

In interpreting section 580b, this court is bound by the decisions of the California Supreme Court. *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using

---

[6] Plaintiffs argue lengthily about the effect of SB 426, which sought to amend § 580b in a way that (Plaintiffs allege) favors them. (ECF No. 34 at 3–8.) In any event, SB 426 had not been enacted into law at the time the alleged violations occurred (nor at the time the Complaint was filed). In California, no part of the Code of Civ. Pro. applies retroactively unless "expressly so declared." Cal. Civ. Code § 3; *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1209 (1988) ("[A] statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application."). Plaintiffs do not provide a reason to think that SB 426 should apply in this case.

7

intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and statements as guidance." *Id*.

Statutory interpretation begins with the language of the statute itself. *Jeffries v. Wood*, 114 F.3d 1484, 1495 (9th Cir. 1997). Section 580b states that "[n]o deficiency judgment shall lie" after default on a purchase-money mortgage. Cal. Civ. Proc. Code § 580b. Section 580b communicates plainly that the purchase money mortgagee may not seek a personal judgment in court against the mortgagor. The statute does not elaborate on whether the mortgagee may then furnish information about the unpaid debt or whether the debt ceases to exist. Had the California legislature wanted courts to find that section 580b eliminated the debt in actions such as the instant one, it could have done so.

In addition, when analyzing the construction of statutes, the primary goal of the court is to ascertain and give effect to the intent of the Legislature. Cal. Civ. Proc. Code § 1859; *People v. Gardeley* 14 Cal. 4th 605, 621 (1996). Statutes "should be interpreted to promote rather than defeat the legislative purpose and policy." *Freedland v. Greco*, 45 Cal. 2d 462, 467 (1955). The California Supreme Court identifies two reasons behind the enactment of section 580b. *DeBerard Properties, Ltd. v. Lim*, 20 Cal. 4th 659 (1999). First, section 580b is a "transaction-specific stabilization measure": it prevents a vendor on a purchase-money mortgage from overvaluing the property and thereby suggests to the purchaser its true value. Second, it is a "macroeconomic stabilization measure": if property values drop and the vendor forecloses, then the purchaser's loss is limited to the land or property itself. *Id*. at 663. Purchasers as a class thus are harmed less than they otherwise would be during a time of economic decline, and the economy benefits. *Id.* at 664.

The Northern District of California has observed that a plain reading of the statute – that section 580b prevents collection of the debt but does not eliminate the debt itself or prohibit reporting – does not appear to contradict the purpose of the statute: to prevent overvaluation and the aggravation of an economic downturn.[7] *Herrera*, 2009 WL 2912517 *4. That Court opined

---

[7] The Plaintiff in *Herrera* brought suit under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (not the FCRA as in the instant case) and California's analogous Rosenthal Fair Debt Collection Practices Act, Cal.

8

that the fact that a debtor could voluntarily pay off an obligation, even though a deficiency judgment was unavailable, would not give creditors any more incentive to overvalue property; and, a downturn would be unlikely to be aggravated if mortgagors who had the means to pay off the debt chose to do so. *Id*. Though this Court is not immediately persuaded that a plain reading of section 580b promotes these two purposes, it agrees with the Northern District that, absent any statutory or case law to the contrary, section 580b says nothing about "obliterating" a debt with the consequences that Plaintiffs claim. *See id*. at *8 ("Section 580b, by its own terms, eliminates a creditor's ability to seek a deficiency judgment, but it does not eliminate the underlying debt. The fact of that debt's existence may be entirely theoretical, given that section 580b closes the courthouse door on any creditor's collection efforts against the mortgagor. However, the claim that section 580b erases the debt, barring [Defendant] from seeking payment in any manner, must fail as a matter of law."). Further, there are cases where an additional security has been properly obtained by the mortgagee, despite the fact that 580b prohibited a deficiency judgment. In *Redingler v. Imperial Savings & Loan Ass'n*, 47 Cal. App. 3d 48 (1975), for instance, a creditor reacquired its fire-damaged property at a foreclosure sale for less than the amount due, and was permitted, despite 580b, to receive the insurance proceeds. *See also Freedland v. Greco,* 45 Cal. 2d 462, 466 (1955); *Hatch v. Security-First Nat. Bank* 19 Cal. 2d 254, 260–61 (1942); *Mortgage Guarantee Co. v. Sampsell* 51 Cal. App. 2d 180, 183–86 (1942).

Plaintiffs seek support from California case law finding that section 580b either eliminates personal liability for the foreclosed-upon mortgage or confines a creditor's recourse to the security itself. (ECF No. 34 at 8–10.) For example, Plaintiffs cite *Brown v. Jensen*, 41 Cal. 2d 193, 197 (1953) (holding that per 580b "The one taking such a [purchase money] trust deed knows the value of his security and assumes the risk that it may become inadequate"); *Catchpole v. Narramore*, 102 Ariz. 248, 251 (1967) (holding that the "statute does not simply govern applicable procedures; it obliterates the debtor's liability"); *Stone v. Lobsien*, 112 Cal. App. 2d 750, 755 (1952) (holding that 580b eliminates a debt because it eliminates personal liability for

---

Civ. Code § 1788. *Herrera*, 2009 WL 2912517 *1.

9

all covered purchase money mortgages); *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000) ("Under 580b, a vendor taking back a purchase money trust deed may only look to the security for recovery of the debt; no deficiency judgment will lie following a sale under the trust deed."). While the court agrees that these cases confirm the plain meaning of section 580b, that the purchase money mortgagee cannot both take back the property following foreclosure and obtain a deficiency judgment for a balance owed, these cases do not speak to the issue at hand: whether section 580b prohibits credit reporting of the unpaid loan. Plaintiffs do not locate (and the Court does not locate) case law interpreting section 580b to operate so as to bar credit reporting of the type at issue here.

iii. Technically accurate yet "misleading"

Plaintiffs argue alternatively that even if it can be said that the debt technically still exists, it is "misleading" to report the balance owed given the fact that section 580b prevents Defendant from collecting on the loan. (ECF No. 34 at 13.) Defendant does not, while furnishing information to the CRAs, also disclose that it cannot obtain a judgment on the account. (ECF No. 1 ¶ 21.) Here, Plaintiffs want their claims to fall within the case law holding that, when a furnisher is aware that a consumer has disputed the information, the furnisher must make a notation that the information is in dispute when continuing to report it. (ECF No. 34 at 13–14.)

The Fourth Circuit has held that after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents an actionable claim under § 1681s-2(b). *See Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 150 (2008). The Ninth Circuit adopted the same reasoning in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009), finding that "[a] disputed credit file that lacks a notation of dispute may well be "incomplete or inaccurate" within the meaning of the FCRA, and the furnisher has a privately enforceable obligation to correct the information after notice." The Fifth Circuit noted in *Sepulvado v. CSC Credit Servs., Inc.* 158 F.3d 890, 895 (5th Cir. 1998) that a credit entry can be "incomplete or inaccurate" within the meaning of the FCRA "because it is

10

patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."

However, Plaintiffs do not identify a particular provision of the FCRA mandating that a furnisher, when reporting a debt, disclose whether or not it may obtain a court-ordered judgment on that debt.  Second, as discussed, the Court does not find it to be in dispute whether section 580b eliminates a purchase money mortgagor's debt such that it cannot be reported.  The thrust of Plaintiffs' theory – that a creditor who cannot obtain a deficiency judgment should be either prohibited from or restricted when furnishing information about the debt – is not implausible, but none of the statutory authority or case law cited by Plaintiff has established a basis for this claim.  Finally, the Complaint does not allege enough facts for the court to find that it should fall within the case law finding actionable a furnisher's failure to note that the information was disputed.  For example, the *Saunders* case involved consumer's allegations that he incurred late fees and penalties as a result of creditor's own admitted accounting errors.  *Saunders*, 526 F.3d at 145–148.  In *Gorman*, plaintiff's dispute centered on his refusal to pay a credit card charge on an allegedly defective entertainment system that he had not returned to the merchant.  *Gorman*, 584 F.3d at 1150.  The Ninth Circuit's summary judgment review in that case involved an examination of the content of the notices that the CRAs sent to the furnisher upon learning of the dispute, the extent of the furnisher's investigation after receiving this notice, and the sequence of events leading Plaintiff to refuse to pay off the charges in the first place.  *Id*. at 1150–53, 1155–65.

Plaintiffs offer no facts indicating that they actually paid off the second mortgage or that the amount being reported was incorrect.  That is, Plaintiffs do not identify a factual disagreement about the status of their debt.  Plaintiffs make the legal conclusion that their debt no longer exists and furnishers cannot provide CRAs information about it.  A furnisher cannot be expected to report information only after independently addressing a possible legal objection as to the status of a debt.  *See Chiang v. Verizon New England Inc.,* 595 F.3d 26, 38 (1st Cir. 2010) ("We emphasize that, just as in suits against CRAs, a plaintiff's required showing is *factual* inaccuracy,

11

rather than the existence of disputed legal questions … [citations omitted] … Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters that "turn[ ] on questions that can only be resolved by a court of law. [*DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)]"); *Gorman* 584 F.3d at 1163 ("[A] furnisher does not report "incomplete or inaccurate" information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.  It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b).").

Plaintiffs have not identified a factual inaccuracy in the information that Defendant reported that would give rise to a bona fide dispute.  Nor, as discussed, have they identified case law or statutory authority mandating that Defendant notate, alongside the information furnished, that Plaintiffs disputed the debt or that Defendant could not obtain a deficiency judgment.

Plaintiffs' claim under the FCRA is dismissed with leave to amend.

**Claim 2: Violation of the CCCRA, Cal. Civ. Code § 1785.25(a)**

Plaintiffs allege a violation of the California Consumer Credit Reporting Act (CCCRA), California Civil Code § 1785.25(a), which provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  (ECF No. 1 ¶¶ 38–43.)

The FCRA expressly exempts section 1785.25(a) from its general exclusion of state law claims on matters governed by § 1681s-2.  15 U.S.C. § 1681t(b)(1)(F).  While noting the discussion among courts as to this issue, this Court adheres to the Ninth Circuit ruling that a party may bring a private cause of action under section 1785.25(a). *See Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 888 (9th Cir. 2010).

Plaintiffs do not make additional or separate arguments for their claim under the CCCRA as they do for the FCRA claim.  As discussed, the Court does not find that Plaintiffs have

sufficiently pled that Defendant, either willfully or negligently, furnished inaccurate information. This claim is therefore dismissed with leave to amend.

### IV.    Conclusion

For the foregoing reasons, it is HEREBY ORDERED that:

1. Defendant's Motion to Dismiss (ECF No. 27) the first and second claims of Plaintiffs' Complaint (ECF No. 1) is GRANTED;

2. Plaintiffs are given leave to amend and shall file and serve a First Amended Complaint within 14 days of entry of this Order;

3. Defendants shall file their responsive pleading within 21 days of service of the First Amended Complaint.

IT IS SO ORDERED.

Dated: February 18, 2014

Troy L. Nunley
United States District Judge

13