UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN ROBERT MURPHY, JR. and LOAN T. NGUYEN MURPHY,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC<br><br>Defendant. | No. 2:13-cv-555-TLN-EFB<br><br><br>**ORDER** |

The matter is before the Court on Plaintiffs Warren and Loan Murphy's ("Plaintiffs") First Amended Complaint ("FAC") (ECF No. 43) and Defendant Ocwen Loan Servicing, LLC's ("Defendant") Motion to Dismiss (ECF No. 46) the FAC. The Court's prior order (ECF No. 40) granted Defendant's motion to dismiss the original Complaint, and the material facts in the instant FAC remain the same. However the parties have made new arguments with respect to the legislative history of Cal. Civ. Proc. Code § 580b and the misleading nature of furnishing information on a debt for which no deficiency judgment can be obtained. After further consideration of these arguments, the Motion to Dismiss (ECF No. 46) is DENIED.

1

**I. Background**

i. Facts

In June 2006, Plaintiffs purchased a residence located at 9254 Welford Ct., Sacramento CA 95829. The purchase was financed by two loans issued by Litton Mortgage and serviced by Little Loan Servicing. Plaintiffs state that on September 1, 2011, Defendant "acquired ownership of Litton Loan Servicing, L.P., including [] Plaintiffs' loans, agreed to assume its liabilities, and serviced the loans owned by a securitized trust." (ECF No. 43 ¶¶ 9–10.)

Plaintiffs stopped making their monthly payments in or about June 2008. Thereafter, in or before January 2010, the holder of the first deed of trust initiated foreclosure proceedings that resulted in a trustee's sale.[1] The sale price did not pay off the amounts owed on both loans, leaving an unpaid second position amount of approximately $81,085.00. (ECF No. 43 ¶ 11–12; ECF No. 46 at 2.)

Both parties indicate, as this Court has relied upon, that the second position debt here arose from a purchase money mortgage within the meaning of § 580b of the California Code of Civil Procedure. Section 580b, discussed in greater detail below, prevents a purchase money mortgagee or trustee from both acquiring the debtor's property following foreclosure and obtaining a deficiency judgment requiring the debtor to make up any difference not satisfied by the sale. *See* Cal. Civ. Proc. Code § 580b.[2]

In or around July 2012, Plaintiffs conducted a credit review with the three major consumer reporting agencies, Experian Information Solutions, Inc., Equifax LLC, and Trans Union LLC (the "CRAs"), and discovered that their loan account was being reported as owing a balance of

---

[1] The Court's prior order (ECF No. 40 at 6) construed the facts as being that Defendant held the deeds of trust to the property when foreclosure occurred. This is incorrect. Defendant clarifies that it is only the loan servicer. (ECF No. 49 at 2.) In support of its dismissal motion Defendant attaches copies of the first and second Deeds of Trust, recorded on June 30, 2006; a Notice of Trustee's sale recorded on June 30, 2009; and a Trustee's Deed Upon Sale recorded on January 28, 2010. (Def.'s Request for Judicial Notice, ECF No. 47-1, ex. 1-4.) Plaintiffs have not objected to these exhibits; the Court takes judicial notice of them. Otherwise Defendant does not argue that these exhibits alter its duties as a furnisher of information under the FCRA and the CCRAA.

[2] California Senate Bill 426 was enacted on January 1, 2014, which amends the text of § 580b. Plaintiffs have not alleged that Defendant violated its duties as a furnisher after January 1, 2014. No part of the California Code of Civil Procedure applies retroactively unless "expressly so declared." Cal. Civ. Proc. Code § 3; *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1209 (1988) ("[A] statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application."). Absent indication that SB 426 should apply retroactively, the Court applies § 580b as it stood prior to the SB 426 amendment.

$81,085.00. Subsequently, Plaintiffs informed the CRAs by letter that they were disputing the accuracy of this information. The CRAs sent automatic customer dispute verification forms to Defendant. Plaintiffs state that as of August 2012, the CRAs were continuing to report their loan account as past due and owing a balance of $81,085.00. (*See* ECF No. 43 ¶¶ 19–23.)

ii. Summary of Arguments

Plaintiffs' contention is that § 580b of the Cal. Civ. Proc. Code effectively extinguishes their debt, and thus to furnish information indicating that the debt still exists is inaccurate and misleading within the meaning of the federal Fair Credit Reporting Act ("FCRA") and California's Consumer Credit Reporting Agencies Act ("CCRAA"). (ECF No. 43 ¶¶ 29–41.) Plaintiffs also allege Defendant failed to notify the CRAs that Plaintiffs were disputing the information it furnished, in violation of the FCRA and the CCRAA. (ECF No. 43 ¶ 34.) Plaintiffs claim Defendants' conduct has caused harm to their reputation and credit score resulting in an inability to obtain credit, other expenses, and physical and emotional damage. (ECF No. 43 ¶¶ 25–28.)

Defendant responds that it is not attempting to collect Plaintiffs' debt, and that it is merely furnishing information to CRAs as a loan servicing company. Defendant claims that the debt still exists for the purposes of furnishing information about it, despite the application of § 580b, because Plaintiffs never actually paid off the debt. Defendant also contends it has no obligation to notify the CRAs that the information it furnishes is disputed, because there is no bona fide dispute as to whether the debt remains unpaid and thus still exists. Therefore, no plausible claim for relief has been stated. (ECF No. 46 at 3-6.)

iii. Procedural Background

Plaintiffs filed the original Complaint (ECF No. 1) on March 20, 2013. Defendant filed a Motion to Dismiss (ECF No. 27) on May 22, 2013. The Court granted that Motion to Dismiss, with leave to amend, on February 19, 2014. (ECF No. 40.) Plaintiffs filed a First Amended Complaint ("FAC") on March 4, 2014. (ECF No. 43). Defendant filed a Motion to Dismiss the FAC (ECF No. 46) on March 25, 2014. Plaintiffs have filed an Opposition to the Motion to Dismiss (ECF No. 48) and Defendants have filed a Reply (ECF No. 49.)

As in the original complaint, the FAC asserts causes of action under the FCRA, 15 U.S.C. § 1681 *et. seq.*; and California's analogous Consumer Credit Reporting Act ("CCRAA"), Cal. Code of Civ. Proc. § 1785.25(a).  (ECF No. 43.)[3]

**II.  Legal Standard: Motion to Dismiss**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

---

[3] Plaintiffs' original Complaint (ECF No. 1) asserted claims against the three CRAs.  Plaintiffs and the CRAs have reached settlement and stipulated to dismissal.  (*See* ECF Nos. 33, 39, 45.)

4

facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

**III. Statutory Framework**

i. Section 580b

At the time of the alleged violations, § 580b read:

> No deficiency judgment shall lie in any event … under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property ….

Cal. Civ. Proc. Code § 580b. A deficiency judgment is "a personal judgment against the debtor mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Herrera v. LCS Financial Serv. Corp.*, 2009 WL 2912517 *3 (N.D. Cal. 2009) (citing *Cornelison v. Kornbluth*, 15 Cal. 3d 590, 603 (1975)). Effectively, where the security is a purchase money deed of trust or mortgage, § 580b bars the trustee, following foreclosure on the property, from additionally obtaining a deficiency judgment. *Id*. (citing *Jeanese, Inc. v. Surety Tit. & Guar. Co.,* 176 Cal. App. 2d 449, 454 (1959)). The bar against a deficiency judgment applies "even when the vendor takes a second purchase money trust deed. Section 580b precludes a vendor in second position from bringing an action on the note after the security has been rendered valueless due to sale by the senior lienor." *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000) (citing *Brown v. Jensen,* 41 Cal. 2d 193, 197–98 (1953)).

ii. FCRA § 1681s-2(b)

Congress enacted the Fair Credit Reporting Act in 1970 to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins.*

*Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  Accordingly, the Act sought to insure that "consumer reporting agencies exercise their grave responsibilities [with respect to assembling, evaluating, and disseminating information about consumer credit] with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).  In addition to the duties imposed upon consumer reporting agencies, the FCRA also imposes a set of duties upon "furnishers" of information to the CRAs; these duties are detailed in § 1681s-2.

In the instant case, Plaintiffs allege that Defendant violated section 1681s-2(b), which is triggered when a consumer disputes the information being reported by a CRA and the CRA subsequently notifies the entity (in this case Defendant) that has furnished the information.[4]  Once the furnisher receives notice of dispute from the CRA, section 1681s-2(b) requires that the furnisher: 1) conduct an investigation; 2) review all relevant information provided by the CRA concerning the dispute; 3) report the results of the investigation to the CRA; 4) if there is a finding that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the furnisher has provided the information; and 5) either modify, delete, or block further reporting of the information.  15 U.S.C. § 1681s-2(b). Additionally, FCRA §§ 1681n and 1681o provide a private right of action, respectively, for willful and negligent noncompliance with § 1681s-2(b).[5]  *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009).

iii. CCRAA § 1785.25(a)

California Civil Code § 1785.25(a) provides that "[a] person shall not furnish information

---

[4] *See* 15 U.S.C. § 1681i(a)(2) (requiring CRAs promptly to provide notification containing all relevant information about the consumer's dispute).

[5] Section 1681s-2(c) provides that an action under § 1681s-2 subsection (a), for willful and negligent noncompliance, may be pursued only by federal or state officials, and not a private party.  However § 1681s-2 subsection (b), under which Plaintiffs bring suit, is not included in the bar against private actions. See *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F. 3d 1057, 1060 (9th Cir. 2002), approving of the following argument:

> Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. Hence, Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies. But Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher … With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o.

on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

The FCRA exempts section 1785.25(a) from its general exclusion of state law claims on matters governed by § 1681s-2. 15 U.S.C. § 1681t(b)(1)(F).

**IV. Discussion**

i. Legislative history of § 580b

When analyzing the construction of statutes, the primary goal of the court is to ascertain and give effect to the intent of the Legislature. Cal. Civ. Proc. Code § 1859; *People v. Gardeley*, 14 Cal. 4th 605, 621 (1996). Statutes "should be interpreted to promote rather than defeat the legislative purpose and policy." *Freedland v. Greco*, Cal. 2d 462, 467 (1955). The California Supreme Court explains that § 580b was enacted during the declining property values and foreclosures that were characteristic of the economic depression of the 1930s. *Cornelison*, 15 Cal. 3d at 600. Prior to the enactment of anti-deficiency statutes applicable to foreclosures, a mortgagee could obtain a deficiency judgment against the mortgagor for the difference between the amount of the indebtedness and the amount realized from the sale, which in some circumstances amounted to a double recovery. *Id*. Anti-deficiency statutes including § 580b, § 580a, § 580d, and § 726 served to counteract this effect.[6] As the Cal. Supreme Court explains:

> Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [citations] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales.

*Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 42 (1963).

---

[6] *See* Cynthia A. Mertens, *California's Foreclosure Statutes: Some Proposals for Reform*, 26 Santa Clara L. Rev. 533 (1986).

7

As also explained in *Bargioni v. Hill*, 59 Cal. 2d 121, 123 (1963):

> The purposes [of § 580b] are to discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability. [citing *Roseleaf*, 59 Cal. 2d 35 at 42] These purposes are served by relieving the purchaser of personal liability to any person who finances the purchase and takes as security a trust deed or mortgage on the property purchased, provided the financier intended the loan to be used to pay all or part of the purchase price.

The court in *Herrera v. LCS Fin. Servs. Corp.*, 2009 WL 2912517 (N.D. Cal. Sept. 9, 2009) opined that interpreting § 580b such that it bars a deficiency judgment, but keeps the debt intact for certain purposes, is consistent with the dual purposes of preventing the overvaluation of land and preventing the aggravation of an economic downtown. As that court stated, "The fact that a debtor could theoretically choose to voluntarily pay off an obligation on which a deficiency judgment is unavailable will not give creditors any more incentive to overvalue property. Likewise, a downturn is unlikely to be aggravated if mortgagors who have the means to pay off the debt choose to do so." *Id*. at *4.

This Court is not persuaded that permitting a debt subject to § 580b to remain intact, for the specific purpose of credit reporting, serves to prevent the aggravation of an economic downturn. Plaintiffs allege that they have suffered a decreased credit score as a result of the negative entry appearing on their file, and this prevents them from obtaining credit. A review of California courts interpreting § 580b demonstrates a consistent interpretation that the statute was designed to protect the debtor. *See Brown v. Jensen* 41 Cal. 2d 193, 197 (1953) (§ 580b "is necessarily intended to provide a protection for the trustor …"); *Birman v. Loeb*, 64 Cal. App. 4th 502, 512 (1998) ("section 580b places the risk of inadequate security, whether due to overvaluation or market decline, on the lender"); *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000). Permitting the furnishing and reporting of a debt for which no deficiency judgment can be obtained, and which prolongs the negative impact on a mortgagor who no longer has personal liability for the debt, does not appear to promote the purposes of § 580b.

Notwithstanding the intent behind § 580b to protect the debtor, § 580b does not extinguish

the debt for all purposes. An additional security may, in certain circumstances, be realized to cover the debt even though the debtor's personal liability has been extinguished. *See Redlinger v. Imperial Savings & Loan Ass'n*, 47 Cal. App. 3d 48 (1975) (creditor reacquired a fire-damaged property at a foreclosure sale for less than the amount due, and notwithstanding § 580b, was permitted to receive the insurance proceeds); Estate of Moore, 135 Cal. App. 2d 122, 132 (1955) (observing that under section 580b, "the debt technically survives a default so that enforcement of collateral securities may be had"); *Mortgage Guarantee Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942) ("our [California] statutes do not even purport to wipe out the debt, but only to apply in the contingency that a deficiency judgment is sought"). Therefore, to the extent Plaintiffs' claim rests upon the theory that the debt is completely erased (*see* ECF No. 48 at 2-8), this Court, adhering to the weight of the case law, does not find that § 580b has that effect. *See Herrera* 2009 WL 2912517 at *4.

ii. Accuracy of the furnished information

Under the FCRA, a creditor, upon receiving notice of a customer dispute from a CRA, must investigate the dispute, report the results of the investigation, and "if the investigation finds that the information is incomplete or inaccurate, report those results" to the CRA. *See* § 1681s-2(b)(1)(C), (D), (E).[7] Under the CCRAA, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code. §1785.25(a)

Plaintiffs have redirected their arguments on the instant motion to emphasize the misleading and inaccurate nature of furnishing information stating that a debt is owed when no deficiency judgment can be obtained. (ECF No. 48 at 10-14.)

Plaintiffs cite *Saunders v. Branch Banking & Trust Co. of Va*, 526 F.3d 142 (4th Cir. 2008), and the Ninth Circuit's reference to that case in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009). In *Saunders*, plaintiff purchased an automobile from a car dealership, which then assigned the loan to defendant BB & T bank. *Saunders* 526 F.3d at 145.

---

[7] Plaintiffs cite § 1681s-2(a)(1)(A) ("A person shall not furnish any information … if the person knows or has reasonable cause to believe that the information is inaccurate"). However this provision is contained in § 1681s-2(a) for which a claim of willful and negligent violation (see §§ 1681n and 1681o) may be brought only by federal or state officials. *See Gorman*, 584 F.3d at 1162.

9

When plaintiff did not receive a "payment book" for the car, he contacted BB & T numerous times, who informed plaintiff that he owed no money on the loan. *Id*. However, several months later, BB & T sent plaintiff a letter stating that he was in fact "seriously delinquent" on his loan and that he also owed late fees, interest, and other charges, all of which were due in 10 days. *Id*. Plaintiff told a representative from BB & T that he would meet his obligations under the loan, but he refused to pay any penalties or late fees because they were due to BB & T's own accounting errors. *Id*. at 146. Similar to the instant case, plaintiff in *Saunders* contacted the CRAs and disputed that the delinquency should appear on his credit report. *Id*. at 146. At least one CRA issued an automated consumer dispute verification form to BB & T. *Id*. BB & T did not then indicate that the debt was in dispute, and this decision "resulted in a much lower credit score for [plaintiff] than a report of both the debt and the dispute." *Id*. at 146–47. Plaintiff eventually brought suit under the FCRA, alleging that BB & T had violated its duties as a furnisher under § 1681s-2(b)(1). *Id*. at 147. A jury returned a verdict for plaintiff and BB & T appealed, challenging the district court's denial of its motions for judgment as a matter of law, on the basis that plaintiff had presented insufficient evidence to establish a willful violation of the FCRA. *Id*. at 147. In affirming, the Fourth Circuit observed:

> The FCRA requires furnishers to determine whether the information that they previously reported to a CRA is '*incomplete or inaccurate*'. §1681s-2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.

*Id*. at 147.

In *Gorman*, the Ninth Circuit applied analogous reasoning. In that case, plaintiff paid for the delivery and installation of a television on a credit card issued by MBNA America Bank. *Gorman*, 584 F.3d at 1147. However, plaintiff alleged the television was defective and the installation was botched, and did not pay off these charges on his account. *Id*. Because plaintiff did not return the television, MBNA refused to remove the charges from plaintiff's credit account and reported him to the CRAs. *Id*. at 1151–52. Plaintiff continued to dispute the charges and

eventually sued MBNA, in part under the FCRA, based on allegations that MBNA had failed to notify the CRAs that the charges were in dispute. *Id*. The Ninth Circuit characterized the issue as "whether the failure to notify the CRAs that the delinquent debt was disputed is actionable under §1681s-2(b)," and found in the affirmative. *Id*. at 1162. The court held:

> [Plaintiff] does have a private right of action … to challenge MBNA's subsequent failure to so notify the CRAs after receiving notice of [plaintiff's] dispute under § 1681s-2(b). In addition to requiring that a furnisher conduct a reasonable investigation of a consumer dispute, 1681s-2(b) also requires a creditor, upon receiving notice of such dispute, to both report the results of the investigation *and*, "if the investigation finds that the information is incomplete or inaccurate, report those results" to the CRAs.

*Id.*

Recently, the Central District in *Johnson v. Wells Fargo HM Inc.,*, 2013 WL 7211905 *8 (C.D. Cal. Sept. 13, 2013) considered near identical facts and legal issues to those in the instant case. That court found, with reference to *Gorman* and *Saunders*, that "failing to report that a debt is not subject to a deficiency judgment is also potentially misleading," and therefore found the furnisher had violated the FCRA and CCRAA. *Id*. at *8. This Court finds the result in *Johnson* persuasive.

For clarity, the Court reiterates the discussion in its prior order (ECF No. 40) regarding *Gorman* and *Saunders*. Those cases do not necessarily support the outcome in the instant case. In *Gorman* and *Saunders*, the amount reported as owed was objected to because plaintiffs, due to the disputed facts in their cases (botched delivery and installation of equipment; charges incurred due to bank's own accounting errors), claimed they did not owe that amount. The same reasoning supports the outcome in *Abdelfattah v. Carrington Mortgage Serv., LLC* 2013 WL 495358 *3 (N.D. Cal. 2013) (finding actionable plaintiff's claim that the dollar figure of the debt stated on the credit report was inaccurate, because part of that amount had been satisfied by a foreclosure sale). This reasoning is not analogous to the instant case, in that Plaintiffs have not made a factual allegation that they actually paid off the debt or never incurred the debt. *See Chiang v. Verizon New England*, 595 F.3d 26, 38 (1st Cir. 2010) ("We emphasize that, just as in suits against CRAs, a plaintiff's required showing is *factual inaccuracy*, rather than the existence of

disputed legal questions … [citations] … Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters that "turn [] on questions that can only be resolved by a court of law [*DeAndrade v. Trans Union*, LLC, 523 F.3d 61, 68 (1st Cir. 2008)].") Furthermore, Plaintiffs have not alleged facts with the effect that Defendant is attempting to "intimidate consumers into giving up bona fide disputes by paying debts not actually due to avoid damage to their credit ratings." *See Gorman*, 584 F.3 at 1162. Plaintiffs make a legal argument that when § 580b extinguishes a debt, but the loan servicer continues to furnish information to CRAs without at least noting that the debt cannot be collected, this claim against the furnisher is actionable under the FCRA and the CCRAA. In this Court's view, to bring claims such as the instant one into the purview of cases like *Gorman*, *Saunders*, and *Abdelfattah* is to establish a claim based on a legal argument regarding § 580b and the purposes of the FCRA and the CCRAA.[8]

After further consideration the Court finds Plaintiffs' legal argument persuasive. Finding Plaintiffs have stated a claim effectively reverses the Court's prior order (ECF No. 40) as no new material facts have been alleged in the instant complaint. However after conducting a more searching review of the legislative history of Cal. Civ. Proc. Code § 580b and considering the parties' new arguments focused on the misleading nature of furnishing information about a debt for which no deficiency judgment can be obtained, the Court finds Plaintiffs state a claim under the FCRA and the CCRAA.

**V. Conclusion**

Defendant's Motion to Dismiss (ECF No. 46) is DENIED.

Dated: June 20, 2014

_____
Troy L. Nunley
United States District Judge

---

[8] The Court is not aware of a California appellate or Supreme Court decision speaking directly to the relevance of § 580b within the context of the CCRAA and the FCRA. Should such a decision be promulgated that would alter the Court's disposition of the issues presented in this case, the parties are free to argue in that respect at later proceedings.